**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re GERALD MCGRATH, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | Case No. 10 C 6699 |
| | ) | |
| REGAN D. EBERT, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Bankruptcy Case No. 09-B-17612 |
| | ) | Adversary No. 10-A-00057 |
| v. | ) | |
| | ) | |
| GERALD MCGRATH, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Pursuant to 28 U.S.C. § 158(a), Debtor/Defendant/Appellant Gerard McGrath appeals from the judgment that the Bankruptcy Court entered in the underlying Adversary Proceeding on July 7, 2010 in favor of Plaintiff/Appellee Regan Ebert finding a debt in the amount of $3,235.00 non-dischargeable under 11 U.S.C. § 523(a)(6). McGrath also appeals the Bankruptcy Court's August 31, 2010 denial of his motion to alter or amend the judgment and for a new trial. (*See* 10 A 00057, R. 83, Notice of Appeal.) The Court has jurisdiction to hear McGrath's appeal pursuant to 28 U.S.C. § 158. For the following reasons, the Court affirms the Bankruptcy Court's July 7, 2010 judgment and August 31, 2010 denial of McGrath's post-trial motion.

**PROCEDURAL BACKGROUND**

On May 15, 2009, McGrath filed a voluntary Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Case No. 09 B

17612. (09 B 17612, R. 1.) On January 11, 2010, Plaintiff Regan D. Ebert filed an Adversary Proceeding against McGrath pursuant to 11 U.S.C. § 523(a)(6). (10 A 00057, R. 1.) In addition, Daniel Ebert-Balzano brought an Adversary Proceeding against McGrath pursuant to 11 U.S.C. § 523(a)(6). (10 A 00058, R. 1.) The Bankruptcy Court tried both Adversary Proceedings on July 7, 2010. (10 A 00057, R. 56; 10 A 00058, R. 59.) The present appeal only concerns Ebert's Adversary Proceeding.

At the conclusion of the trial, the Bankruptcy Court entered judgment in favor of Ebert and against McGrath in Adversarial Proceeding 10 A 00057 finding a debt in the amount of $3,235.00 non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). (10 A 00057, R. 56, 57.) Thereafter, McGrath filed a timely post-trial motion. (10 A 00057, R. 58, 59.) On August 31, 2010, after conducting an evidentiary hearing, the Bankruptcy Court denied the post-trial motion and on September 8, 2010, McGrath filed a notice of appeal to the United States District Court for the Northern District of Illinois. (10 A 00057, R. 82, 83.)

## FACTUAL BACKGROUND

In the Adversary Complaint, Ebert alleged that starting on or about February 1, 2005, McGrath, in conjunction with his lawyer Lawrence Seiwert, conspired to create and construct fraudulent pleadings against Ebert in her divorce proceedings – in which Seiwert represented Ebert's husband – in order to gain a legal and economical advantage in the divorce litigation. (10 A 00057, R. 1, Compl. ¶ 5.) Ebert further alleged that the affidavit prepared by Seiwert and signed by McGrath in the divorce litigation contained falsehoods wherein McGrath claimed that he owned thoroughbred racehorses in partnership with Ebert and that Ebert concealed this fact from her husband. (*Id*. ¶ 6.) Ebert also alleged that Seiwert set forth these falsehoods so that he

2

could have a legal basis to petition the divorce court to reopen proofs on various issues that Seiwert failed to previously present as a result of his alleged negligence. (*Id.* ¶ 7.) Further, Ebert alleged that in return for his assistance in the divorce proceedings, Seiwert agreed to help assist McGrath in a lawsuit, free of charge, against Ebert and her father Carl Ebert. (*Id.* ¶ 9.)

At the July 7, 2010 Adversarial Proceeding trial, Ebert testified that her father, Carl Ebert, had been involved in horse racing since 1961. (R. 9-5, Excerpt (E), Tr. at 2-3.) In particular, Ebert testified that her father bought 25% of a horse named Duncan Idaho from McGrath and another individual in June 2001. (*Id.* at 9.) Carl Ebert also had other dealings with McGrath in connection with another race horse named Havana Perfecto. (*Id.* at 5.) Ebert testified that she did not have any ownership interest in either race horse nor had her father secretly purchased either horse for her. (*Id.* at 39-40.) Furthermore, Ebert testified that her name did not appear on either Havana Perfecto's or Duncan Idaho's foal papers, which reflect the official ownership of a race horse. (*Id.* at 6-7, 9, 10, 38.) Evidence in the record contains the partnership and registration forms for both horses. These documents do not reflect Ebert's ownership of either Duncan Idaho or Havana Perfecto. (Pl.'s Exs. 6-8, 12-16, 25-35.)

Moreover, Ebert testified that after her father had a heart attack, she and her son, Daniel Ebert-Balzano, became actively involved in monitoring Havana Perfecto and Duncan Idaho at which time they discovered irregularities in Duncan Idaho's official foal papers. (R. 9-5, Excerpt (E), Tr. at 11-12, 34-36, 63-64.) In particular, Ebert testified that it appeared that McGrath forged Carl Ebert's name on the foal papers transferring the horse's ownership to McGrath without permission. (*Id.* at 12; *see also* Pl.'s Ex. 6.) Ebert also testified that she confronted McGrath about forging her father's name on the official foal papers, after which

3

McGrath admitted that he had done so in order to transfer all interests in Duncan Idaho to himself and eventually ship the horse to Ohio to sell. (R. 9-5, Excerpt (E), Tr. at 16-18, 68-69.) Shortly thereafter, Ebert notified her father and Duncan Idaho's trainer about what had occurred to prevent McGrath from transferring Duncan Idaho to Ohio. (*Id.* at 22, 70.)

One of Carl Ebert's secretaries, Barbara Roumeliotis, testified at trial that on November 29, 2004, that McGrath had called Carl Ebert's office and told her to tell Carl Ebert that if McGrath could not ship Duncan Idaho to Ohio, he would make big trouble for Ebert in her divorce proceedings. (R. 9-3, Excerpt (B), Tr. at 2-4) Roumeliotis further testified that McGrath then told her to have Carl Ebert call McGrath's lawyer, Lawrence Seiwert. (*Id.*)

Ebert testified that thereafter, her son contacted McGrath to buyout McGrath's interest in Duncan Idaho. (R. 9-5, Excerpt (E), Tr. at 27-28; Pl.'s Ex. 13.) Meanwhile, Ebert further explained that the only reason her name appeared on the cashier's check for the purchase of Duncan Idaho was that her son did not have his own bank account. (*Id.* at 31-32) Ebert also testified that her son had saved the money to purchase McGrath's interest in Duncan Idaho. (*Id.* at 32.) Roumeliotis also testified that Daniel Ebert-Balzano wanted to purchase Duncan Idaho, but needed a cashier's check to complete the purchase. (9-3, Excerpt (B), Tr. at 5-7.) The official foal papers reflect the transfer from McGrath to Ebert's son, Daniel Ebert-Balzano. (Pl.'s Ex. 13.)

McGrath did not present any witnesses or testimony at the July 7, 2010 trial. Instead, McGrath's counsel informed the Bankruptcy Court that McGrath was getting a blood transfusion the morning of the trial, but would be available to testify that afternoon. (R. 9-4, Excerpt (C), Tr. at 9-10.) Later that day, McGrath's counsel informed the Bankruptcy Court that McGrath could

not make it to the trial until around 5 p.m. (R. 9-4, Excerpt (D), Tr. at 13-14.) Based on the fact that counsel failed to file a continuance prior to the July 7, 2010 hearing, the Bankruptcy Court did not continue the trial at 5 p.m. (*Id.* at 15-16.)

After closing arguments, the Bankruptcy Court held in favor of Ebert and against McGrath finding debt in the amount of $3,235.00 non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). More specifically, the Bankruptcy Court concluded that Ebert had established that McGrath submitted a wilfully false affidavit in her divorce proceedings that caused her to expend $3,000.00 in legal services and $235.00 for copying fees related to those services. (R. 9-2, Excerpt (A), Tr. at 25-26.)

On July 19, 2010, McGrath filed a motion to alter or amend the judgment and for a new trial and on July 30, 2010, McGrath filed a motion to supplement his post-trial motion. (*See* 10 A 00057, R. 58, 59.) In his post-trial motion, McGrath argued that the Bankruptcy Court erred when it refused to continue the trial so that he could testify. Specifically, McGrath maintained that he is a leukemia patient and was undergoing a blood transfusion at the time of the July 7, 2010 trial. (R. 58.)

On August 31, 2010, the Bankruptcy Court held an evidentiary hearing on McGrath's post-trial motion. (10 A 00057, R. 82, 103.) At the hearing, McGrath's testified that he had recently been diagnosed with stage two leukemia and that on July 6, 2010 he went to St. Alexian Hospital in Schaumburg, Illinois, for some blood tests. (R. 103, Post-trial Hr'g, at 5.) Further, McGrath testified that as a result of those blood tests, he had to go back to the hospital the next day, July 7, 2010 – the date of the Adversarial Proceeding's trial – for a blood transfusion. (*Id.* at 6.) McGrath explained that the transfusion was completed by 2:30 p.m. in the afternoon after

5

which he called his lawyer. (*Id*. at 7.) At that time, McGrath made no attempt to come to the courthouse to testify at the Adversarial Proceeding trial. Meanwhile, in support of his post-trial motion, McGrath's counsel submitted the doctor's affidavit concerning McGrath's blood transfusion that took place on July 7, 2010 and McGrath's affidavit. Also, the parties stipulated into evidence McGrath's medical records. (*Id.* at 2-3.)

After the evidentiary hearing, the Bankruptcy Court denied McGrath's post-trial motion. In particular, the Bankruptcy Court concluded that McGrath failed to show that his transfusion could not have been scheduled for one day later and that the doctor's affidavit did not indicate that there was a necessity to do the transfusion within one day of the finding that the transfusion was necessary. (*Id*. at 19.) The Bankruptcy Court also denied McGrath's post-trial motion based on the fact that had McGrath attempted to come to the courthouse after his transfusion ended at 2:30 p.m. on July 7, 2010, he would have made it in time to give his testimony well before 5:00 p.m. (*Id*. at 19-20.)

## LEGAL STANDARD

On appeal from the bankruptcy court, "the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.R.Bankr.P. 8013; *Mungo v. Taylor,* 355 F.3d 969, 974 (7th Cir. 2004). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013; *In re Berman,* 629 F.3d 761, 766 (7th Cir. 2011). Accordingly, the Court reviews the Bankruptcy Court's findings of fact for clear error and its legal conclusions *de novo*. *See In re Berman,* 629

6

F.3d at 766. A bankruptcy court's factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Kovacs v. United States,* 614 F.3d 666, 672 (7th Cir. 2010) (quoting *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009)). In general, under the clearly erroneous standard, if there are two permissible views of the facts, a court's choice between them cannot be clearly erroneous. *See Dexia Credit Local v. Rogan,* 629 F.3d 612, 628 (7th Cir. 2010).

The bankruptcy code provides certain exceptions to the general rule of discharge in bankruptcy proceedings. *In re Cohen,* 507 F.3d 610, 612 (7th Cir. 2007). Relevant to the present appeal is Section 523(a)(6), which "exempts from discharge any debt 'for willful or malicious injury by the debtor to another entity or to the property of another entity.'" *In re Smith,* 582 F.3d at 771 (quoting 11 U.S.C. § 523(a)(6)). A "bankruptcy court applies a preponderance of the evidence standard when making dischargeability determinations under § 523(a)." *Ojeda v. Goldberg,* 599 F.3d 712, 716 (7th Cir. 2010); *see also Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In other words, because bankruptcy courts "apply a presumption in favor of discharge in bankruptcy, the creditor bears the burden to demonstrate by a preponderance of the evidence that the exception applies." *In re Cohen,* 507 F.3d at 613.

**ANALYSIS**

McGrath's arguments on appeal are somewhat of a moving target. The Court will address his arguments made under the "Argument" section of his appellate brief that are developed and supported by legal authority. *See Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir.

7

2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation omitted); *see also Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of any discussion legal brief amounts to abandonment of claim).

**I.      Motion for a Continuance**

First, McGrath argues that the Bankruptcy Court abused its discretion in denying his motion for a continuance for a new hearing. *See Matter of Narowetz Mech. Contractors, Inc.,* 898 F.2d 1306, 1309 (7th Cir. 1990) (ruling on motion for continuance is subject to abuse of discretion standard); *Herzog v. Leighton Holdings, Ltd.,* 239 B.R. 497, 503 (N.D. Ill. 1999) (same). "A bankruptcy court abuses its discretion when its decision is 'premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied.'" *In re UAL Corp.,* 635 F.3d 312, 319 (7th Cir. 2011) (citation omitted).

Here, McGrath argues that he was unable to testify on July 7, 2010 due to his blood transfusion that day as supported by his affidavit and his physician's affidavit, as well as his testimony at the post-trial hearing. McGrath, however, does not explain how the Bankruptcy Court abused its discretion by either pointing to an erroneous factual finding or arguing that the Bankruptcy Court relied upon an incorrect legal premise or that there is no evidence supporting the denial. *See id.; In re Airadigm Comm'cn, Inc.,* 616 F.3d 642, 652 (7th Cir. 2010).

Under these circumstances and based on the evidence in the record, the Bankruptcy Court did not abuse its discretion because the court made factual findings and relied upon evidence that despite McGrath's blood transfusion on July 7, 2010, McGrath not only could have made it to the courthouse in time for the July 7, 2010 trial, but that McGrath had failed to establish that his

8

blood transfusion could not have been scheduled for one day later. The Bankruptcy Court also relied upon the fact that the doctor's affidavit did not indicate that there was a necessity to do the transfusion within one day of the finding that the transfusion was necessary. The Court further notes that McGrath's reliance on Illinois procedural law is unavailing in this federal bankruptcy matter. *See In re SMEC, Inc.,* 161 B.R. 953, 955 (M.D. Tenn. 1993) ("A bankruptcy court sits as a federal court, with its own set of procedural rules and its own unique, federal mission."). Because the Bankruptcy Court did not abuse its discretion in denying McGrath's motion for a continuance, McGrath's first argument fails.

## II. McGrath Affidavit in Ebert Divorce Proceedings

Next, McGrath argues that the Bankruptcy Court erred in refusing to consider his affidavit submitted in the Ebert divorce proceedings when he was unavailable for the July 7, 2010 trial because it was not inadmissible evidence, as the Bankruptcy Court concluded. Specifically, McGrath argues that his earlier affidavit is excepted from the hearsay rule pursuant Federal Rule of Evidence 804(b)(1) because he was unavailable as a witness. *See United States v. McGowan,* 590 F.3d 446, 451 (7th Cir. 2009) ("Rule 804(b)(1) provides that certain out-of-court statements are not excluded by the hearsay rule if the declarant is 'unavailable as a witness.'").

Although McGrath's counsel did not argue that the affidavit was excepted under Rule 804(b)(1) at the July 7, 2010 trial, he did make an argument pursuant to Rule 804(b)(1) in his post-trial motion.[1] At the post-trial hearing, however, the Bankruptcy Court did not reach this

---

[1] Although Federal Rule of Evidence 804(b)(1) pertains to former testimony and not affidavits, Rule 807 allows for the admission of statements averred in affidavits when the declarant is unavailable as a witness. *See United States v. Gilbert,* 391 F.3d 882, 884 (7th Cir.

9

issue. In any event, because McGrath raised this issue for the first time in his post-trial motion, this argument is waived. *See Stephens v. Miller,* 13 F.3d 998, 1008 n.5 (7th Cir. 1994) ("evidentiary rationale not raised before the trial judge at the time of ruling is waived"). In addition, McGrath failed to make a proper offer of proof under Rule 103(a)(2) at trial, namely, the he informed "the court and opposing counsel what he expects to prove by the excluded evidence, and ... demonstrate[d] the significance of the excluded testimony." *United States v. Moore,* 425 F.3d 1061, 1068-69 (7th Cir. 2005).

Similarly, McGrath argues that the Bankruptcy Court should have admitted his affidavit pursuant to Federal Rule of Evidence 801(d)(2) as an admission by a party opponent. *See United States v. Hicks,* 635 F.3d 1063, 1068 (7th Cir. 2011). Again, McGrath's counsel did not argue that this affidavit was admissible under Rule 801(d)(2) at the July 7, 2010 trial, and although McGrath made this argument in his post-trial motion, the Bankruptcy Court did not reach this issue. Because McGrath did not raise this issue before the Bankruptcy Court at the time of the ruling or make a sufficient offer of proof under Rule 103(a)(2), this argument is waived. *See Moore,* at 1068-69; *Stephens,* 13 F.3d at 1008 n.5.

## III. Willful and Malicious Injury

McGrath also argues that the Bankruptcy Court erred in finding that he had submitted a willfully false affidavit about the ownership of Duncan Idaho and Havana Perfecto in Ebert's divorce proceedings. The Bankruptcy Court specifically concluded that McGrath's affidavit was willful and malicious based on McGrath's telephone call with Barbara Roumeliotis that took place shortly before the aaffidavit was submitted, as well as evidence in the record concerning

---

2004).

McGrath's threats to send Duncan Idaho to Ohio. To recap, Roumeliotis testified at trial that on November 29, 2004, that McGrath had called Carl Ebert's office and told her to tell Carl Ebert that if McGrath could not ship Duncan Idaho to Ohio, he would make big trouble for Ebert in her divorce proceedings. Roumeliotis further testified that McGrath then told her to have Carl Ebert call McGrath's lawyer, Lawrence Seiwert.

Based on the evidence in the record, the Bankruptcy Court's factual finding is not clearly erroneous because this Court is not left with the definite and firm conviction that a mistake has been made. *See Kovacs,* 614 F.3d at 672. To clarify, viewing all of the evidence submitted at trial, the record reveals that McGrath's statements concerning Ebert's ownership in Havana Perfecto and Duncan Idaho were false. This evidence was not only Ebert's and Roumeliotis' testimonial evidence, but other evidence in the record that Ebert did not have any ownership interest in either Duncan Idaho and Havana Perfecto, including the horses' foal papers. More specifically, the foal papers reflect that the owners of Duncan Idaho and Havana Perfecto included McGrath and Carl Ebert, along with other individuals, but not Regan Ebert. Indeed, the Bankruptcy Court concluded that the documentation and Regan Ebert's testimony were completely consistent with the conclusion that she was not an owner of these horses. (R. 9-2, Excerpt (A), Tr. at 18, 19.) Thus, the Bankruptcy Court's finding is not clearly erroneous – even though McGrath argues that Ebert's ownership of the horses was exhibited by her control over them – because if there are two permissible views of the facts, a court's choice between them cannot be clearly erroneous. *See Dexia Credit Local,* 629 F.3d at 628.

Therefore, McGrath's argument that the Bankruptcy Court's erred in finding that he had submitted a willfully false affidavit about the ownership of Duncan Idaho and Havana Perfecto
11

in Ebert's divorce proceedings fails. On a final note, Ebert presented sufficient evidence at trial to overcome the presumption to discharge McGrath's debts based on McGrath's false statements made in his affidavit pursuant to 11 U.S.C. § 523(a)(6). *See In re Berman,* 629 F.3d at 765.

IV. **Roumalatis Trial Testimony**

Finally, McGrath maintains that the Bankruptcy Court abused its discretion in admitting the hearsay testimony of Barbara Roumalatis' telephone conversation with McGrath in which McGrath told her to tell Carl Ebert that if McGrath could not ship Duncan Idaho to Ohio, he would make big trouble for Ebert in her divorce proceedings. McGrath's counsel, however, failed to make any objections to Roumeliotis' testimony at trial. In his reply brief, McGrath argues that this is a distinction without a difference because it was a bench trial and that the Bankruptcy Court could filter the evidence. McGrath's argument is misplaced. Counsel's failure to object to Roumeliotis' testimony before the Bankruptcy Courts means that this issue was not properly preserved for appeal. *See In re Airadigm Comm'cn, Inc.,* 616 F.3d at 653. As such, this issue is waived. *See id.*; *see also Matter of Kroner,* 953 F.2d 317, 319 (7th Cir. 1992) ("an issue not preserved for appeal is simply not reviewable"); *Freeland v. Enodis Corp.,* 540 F.3d 721, 738 (7th Cir. 2008) ("evidentiary objection not raised in the district court is waived on appeal"); Fed.R.Evid. 103(a)(1). In any event, McGrath's prior statements are admissions by a party opponent under Rule 801(d)(2), and Roumalatis' portion of the conversation is admissible for context, and thus not hearsay. *See Estate v. Moreland v. Dieter,* 395 F.3d 747, 754 (7th Cir. 2005).

## CONCLUSION

For the stated reasons, the Court affirms the Bankruptcy Court's July 7, 2010 judgment and the August 31, 2010 denial of McGrath's post-trial motion.

**Dated:** May 16, 2011

              **ENTERED:**

              _____
              **AMY J. ST. EVE**
              **United States District Court Judge**